DELORES BELL, Plaintiff-Appellant, v. THE CIVIL SERVICE COMMIS-
SION *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 86—2352

Opinion filed September 22, 1987.

Alan Rhine, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Bret A. Rappaport, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, Delores Bell, appeals from an order of the circuit court affirming the Civil Service Commission's (Commission's) decision to discharge plaintiff from her employment with the Illinois Department of Registration and Education (Department). Plaintiff contends that the court erred in affirming the Commission's decision. We agree.

In this appeal, plaintiff challenges the sanction of discharge imposed by the Commission over the recommendation of the administrative hearing officer that she be suspended for 30 days.

Plaintiff was employed by the Department as a licensing investigator II for the real estate section. The Department brought charges against her alleging that she falsified her technical time reports by attributing hours of work to cases that were closed, cases which had no documentation to substantiate the work or which belonged to other investigators.

The evidence shows that plaintiff was a State employee since 1969. She was transferred to the Department in August 1973 and was assigned, through a series of promotions, as an investigator in the real estate section. The real estate section is an investigative unit responsible for receiving and investigating complaints about licensed real estate brokers, salesmen and corporations. Plaintiff was employed by the Department continuously from August 1973 until November 1982, when she was discharged.

The Director of the Illinois Department of Central Management Services sought discharge of plaintiff after an internal audit of employee time reports was conducted. Subsequently, hearings were held

on the charges before a hearing officer for the Commission. The officer, after making extensive findings of fact, recommended a 30-day suspension rather than discharge. The Commission rejected the officer's recommendations for suspension and ordered plaintiff discharged. Plaintiff filed a complaint for administrative review in the circuit court. The court affirmed the decision of the Commission and plaintiff brought this appeal.

Several witnesses testified at the hearing. The testimony shows that in 1981, the Department initiated a new system of time reporting and instituted a new form to be used by employees. The form, called a technical time report, was to be used to monitor what work was done on case files and record how investigators spent their time. It was designed to insure the accountability of investigators' time. No policy manuals, employee manuals or directives concerning investigators' use of time existed prior to the institution of these forms. There was no previous requirement that the investigators account for their time on a case-by-case basis.

The new forms provided a space for the investigators to record, on a daily basis, the amount of time they worked on each case. There was also a space provided for reporting time spent on administrative, supervisory and miscellaneous matters.

An audit of employee time reports was conducted by the Department. Plaintiff was charged with falsifying her time reports as a result of this audit.

Plaintiff testified that a substantial amount of her time was spent on administrative matters unrelated to specific case files. She claims that she erroneously labeled the time that she devoted to administrative matters as investigative time. She was never warned that this was improper prior to her discharge, no effort was made to correct the problem, and each of her time reports had been approved by Mr. Teckteil, her supervisor. His approval led her to believe that she was completing the forms properly.

The evidence shows that plaintiff was an assistant supervisor in her section in addition to being an investigator. She assisted Mr. Teckteil and took his place in his absence. Plaintiff performed administrative, supervisory and clerical duties for Mr. Teckteil. Witnesses testified that Mr. Teckteil was often absent from the office and had an insurance business in addition to his employment with the Department.

Plaintiff claimed that Mr. Teckteil advised her to credit the time that she spent performing some of his duties to her own cases. Other witnesses confirmed that Mr. Teckteil was out of the office a great

deal and plaintiff was expected to perform his functions during that time.

The Department contends that the audit revealed an excessive number of hours reported by plaintiff on her reports for which there was no corresponding activity documented in the files. Plaintiff reported a total of 512 hours worked on cases for the period in question. Approximately one-third of her accounted hours were recorded in closed case files.

The evidence shows that seminars were conducted to teach the employees how to use the new forms, an explanatory pamphlet was distributed, and supervisors held meetings from time to time on how to use the forms.

Glenn Crick, deputy director of the Department, testified that he stressed the importance of the forms at an employee meeting and told employees "This is the document I will use to fire you if you are not doing your job." Plaintiff signed a statement indicating that she read the rules and understood that a violation may be grounds for disciplinary action up to and including discharge.

Harold Teckteil, plaintiff's supervisor, testified that while he approved each form, he checked the reports only to the extent necessary to verify the total number of hours worked per reporting period. If the totals added up to 72 to 84 hours for the reported two-week period, he would approve them. He also testified that plaintiff was his assistant, performed tasks for him, and was in charge in his absence.

It is important to note that the technical time report used by the plaintiff was subsequently changed after the audit to incorporate areas of time which were spent working on a case that would not necessarily generate a report. Additionally, the evidence showed that plaintiff was not the only employee under Mr. Teckteil's supervision that had difficulty with accurately filling out the reports. Three of Mr. Teckteil's four to seven subordinates were either fired or resigned because of problems with the accuracy of their time reports.

The hearing officer found, *inter alia,* that Mr. Teckteil's method of reviewing the reports "shows at least his approval of the method in which the Respondent [plaintiff] was covering her time that she spent performing as his assistant."

After hearing all of the evidence, the hearing officer concluded:

"It [the Department] did not prove that the Respondent Ms. Bell intentionally falsified these reports \*\*\*. Everyone, including the Respondent's supervisor, indicated that she was present at the job and that they had no complaints regarding her performance.

\* \* \*

It is difficult to see what purpose it would have served the Respondent [plaintiff] to credit hours to cases which were not actually worked on \* \* \*. A more probable explanation of Respondent's actions is that she lacked a complete understanding of the technical time reports. She had been given instructions by her supervisor which resulted in her attributing time to cases instead of to administrative or supervisor time."

The hearing officer also found that the Department assumed that the existence of the reports without corresponding reports in case files indicated an intentional falsification by the plaintiff. While the Department proved that discrepancies existed in plaintiff's reports, "it did not prove that Respondent intentionally falsified these reports." Accordingly, the hearing officer recommended that the discharge be reversed and plaintiff be given a 30-day suspension.

The Commission, in their findings, merely adopted the hearing officer's decision "to the extent not inconsistent with their comments." However, their "comments" only stated:

"[I]t is our judgment that the charges were proved. Discharge is warranted because of the serious consequences of the failure to properly account. We therefore, uphold discharge and order respondent discharged from her position \* \* \*."

The specific findings of the hearing officer were never rejected. Plaintiff sought administrative review in the circuit court. She now appeals the circuit court's order affirming the decision of the Commission.

I

■ The sole issue on appeal is whether the maximum sanction of discharge imposed is arbitrary, unreasonable or unrelated to the needs of the service. (*Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 552, 426 N.E.2d 885.) Unlike findings of fact, agency determinations of cause for discharge are not *prima facie* true and correct. (*Brown v. Civil Service Com.* (1985), 133 Ill. App. 3d 35, 39, 478 N.E.2d 541, *appeal denied* (1985), 108 Ill. 2d 557.) The determination of whether cause to discharge exists is indeed subject to judicial review.

■ ■ The Commission's determination to discharge an employee may be overturned if the decision is arbitrary, unreasonable, or unrelated to the requirements of the service. (*Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 552, 426 N.E.2d 885.) This analysis requires a determina-

tion of whether the findings of fact provide a sufficient basis for the conclusion that cause for discharge does or does not exist. (85 Ill. 2d 547, 551, 426 N.E.2d 885.) We conclude that based on the record before us, discharge is not warranted.

The Personnel Code prohibits the discharge of an employee except for cause. (Ill. Rev. Stat. 1983, ch. 127, par. 63b111.) There is no statutory definition of cause. Rather, cause has been judicially defined as some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service, and which the law and sound public policy recognize as good cause for no longer holding the position. (*Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 551, 426 N.E.2d 885.) In this case, plaintiff's confusion and misunderstanding of filling out a newly introduced time-reporting form cannot be said to be detrimental to the discipline and efficiency of the Commission.

Plaintiff worked in a position where a substantial amount of her time was spent on administrative matters unrelated to any ongoing investigations. She often performed duties for her supervisor. Her testimony that she erroneously labeled this time spent on administrative functions as investigative time assigned to a particular case accounts for the discrepancies that the audit disclosed and stands unrebutted. The hearing officer was the only one who heard the testimony and was therefore in the best position to judge the credibility of the witnesses. Her decision was rendered after hearing all of the testimony and reviewing the evidence.

Plaintiff asserts that the findings of the Commission must be sufficient to allow a reviewing court to make an intelligent decision on review. In this case, the Commission failed to make any finding that supported their conclusion.

While the Commission is not bound to accept the findings or recommendations of the hearing officer, the Commission's findings will not be disturbed on review unless contrary to the manifest weight of the evidence. (*Starkey v. Civil Service Com.* (1983), 97 Ill. 2d 91, 101, 454 N.E.2d 265.) In this case, the findings of the hearing officer are not against the manifest weight of the evidence.

The Commission did not set forth specific findings of fact or conclusions of law in support of their decision not to follow the hearing officer's recommendation that plaintiff be suspended for 30 days. There is, however, substantial evidence in the record to support the hearing officer's finding that the Department failed to prove that the plaintiff intentionally falsified documents as charged. The evidence

also supports the hearing officer's more reasonable conclusion that the plaintiff misunderstood the instructions on allocating her time.

Section 14 of the Illinois Administrative Procedure Act states in pertinent part:

"A final decision or order adverse to a party (other than the agency) in a contested case shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accomplished by a concise and explicit statement of the underlying facts supporting the findings." (Ill. Rev. Stat. 1983, ch. 127, par. 1014.)

In this case, the hearing officer's findings were set forth in accordance with the statute. Those findings support the hearing officer's conclusions and disposition. The Commission's findings were, however, merely conclusory and insufficient. They therefore fail to meet the standards and requirements necessary to support the Commission's conclusion that discharge was warranted. *Bodine v. Civil Service Com.* (1985), 134 Ill. App. 3d 341, 480 N.E.2d 160.

Since the Commission failed to set forth reasonable support of their decision to discharge the plaintiff, their decision was arbitrary and unreasonable.

The Commission neither rejected nor made any finding inconsistent with the hearing officer's findings of facts. The Commission's "findings" were not sufficiently specific to support their conclusion, which was contrary to the hearing officer's conclusion.

Considering the length of plaintiff's service as a State employee, her overall performance, and the failure of the Commission to meet the requirements of section 14 of the Code, we conclude that plaintiff's conduct was not such that the discipline and efficiency of the Department would be undermined if plaintiff was not discharged. Plaintiff's actions were not sufficiently substantial or related to her performance duties to call for the maximum sanction of discharge. Clearly, the evidence does not justify imposition of "industrial capital punishment." We therefore conclude that the evidence concerning the charges, which the hearing officer found unproven, was insufficient as a matter of law to support the ultimate sanction of discharge.

## II

Next, plaintiff contends that the Commission failed to follow their own rules which mandate progressive corrective discipline. We agree.

The Administrative Code, applicable to the Civil Service Commis-

sion and in force at the time discharge proceedings were initiated against plaintiff, includes Rule 302.626, which provides in pertinent part:

"Unless grounds clearly are present warranting immediate discharge or suspension pending decision on discharge, employees shall be subject to corrective discipline progressively utilizing counseling, warnings, and/or suspension, as the facts and circumstances dictate, prior to discharge. If an employee's work or work related conduct remains unacceptable after the application of progressive corrective discipline, such employee may be discharged in accordance with the appropriate rules below." (80 Ill. Adm. Code 302.626 (1985).)

Plaintiff was never told by her supervisor that she was doing anything improper before she was suspended pending discharge. She was never advised of any wrongdoing and was never given an opportunity to correct her conduct.

In disciplinary proceedings, a public body must comply with its own rules and an employee being disciplined is entitled to rely upon those rules. (*Brown v. Civil Service Com.* (1985), 133 Ill. App. 3d 35, 40, 478 N.E.2d 541, *appeal denied* (1985), 108 Ill. 2d 557.) Administrative rules and regulations have the force and effect of law and, like statutes, are presumed valid. Therefore, the Commission is bound by these rules. 133 Ill. App. 3d 35, 40, 478 N.E.2d 541.

Clearly, under the Administrative Code, the Department was required to attempt to correct the problem of improper completion of time reports prior to discharge. Plaintiff received neither oral nor written reprimands prior to the initiation of discharge proceedings.

■ Since the plaintiff was not previously criticized, warned, disciplined or given any notice of her failure to correctly complete her time reports, the sanction of discharge was arbitrary and unreasonable. The Commission failed to follow their own rule.

The procedure for filling out time reports was newly established. The evidence shows that other employees also had difficulty comprehending the forms. Furthermore, the method of time reporting that gave rise to the charges against the plaintiff in the case at bar was revised subsequent to the proceedings in this case.

In light of the above, we find that the conduct at issue was not of the type where "grounds clearly are present warranting immediate discharge." Moreover, considering the evidence and plaintiff's employment history, the discrepancies in plaintiff's time reports uncovered by the audit can hardly be viewed as so detrimental to the discipline and efficiency of the service as to warrant discharge.

Accordingly, the decision of the trial court affirming the decision of the Commission to discharge plaintiff is reversed and the cause is remanded to the Commission with directions to reconsider the hearing officer's recommendations that a lesser sanction be imposed.

Reversed and remanded.

SCARIANO, P.J., and HARTMAN, J., concur.