In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-2130

VIPUL B. PATEL, *et al.*,

*Plaintiffs-Appellants*,

*v.*

ZILLOW, INC., and ZILLOW GROUP, INC.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17-CV-4008 — **Amy J. St. Eve**, *Judge*.

ARGUED OCTOBER 29, 2018 — DECIDED FEBRUARY 8, 2019

Before BAUER, EASTERBROOK, and SCUDDER, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. A Zestimate is an estimated value for real estate, available on the Zillow web site for about 100 million parcels. Zillow generates Zestimates by applying a proprietary algorithm to public data, such as a building's location, tax assessment, number of rooms, and the recent selling prices for nearby parcels. But because Zillow does not inspect the building, it cannot adjust for the fact that any given parcel may be more attractive and better

maintained, raising its likely selling price, or the reverse. Zillow states that its median error (comparing a Zestimate with a later transaction price) is less than 6%, though the Zestimate is off by more than 20% in about 15% of all sales. Zillow informs users that none of the parcels has been inspected and that Zestimates may be inaccurate, though Zillow touts them as useful starting points.

Plaintiffs filed this suit after learning that the Zestimates for their parcels were below the amounts they hoped to realize. For example, Vipul Patel listed his home with an asking price of $1.495 million and contends that the Zestimate of $1,333,350 scared away potential buyers. Plaintiffs asked Zillow either to increase the Zestimates for their parcels or remove them from the database. When it declined to take either step, they filed this suit, under the diversity jurisdiction, invoking the Illinois Real Estate Appraiser Licensing Act, 225 ILCS 458/1 to 458/999-99, which forbids the appraisal of real estate without a license, and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 to 510/7, which forbids unfair or misleading trade practices. Plaintiffs contend that a Zestimate is an appraisal and not only unfair but also misleading because (plaintiffs assert) it is inaccurate yet Zillow does not accommodate requests for change or removal. The suit began in state court and was removed to federal court under the diversity jurisdiction. The district court dismissed all of plaintiffs' claims for failure to state a claim on which relief may be granted. See Fed. R. Civ. P. 12(b)(6). 2017 U.S. Dist. LEXIS 134785 (N.D. Ill. Aug. 23, 2017); 2018 U.S. Dist. LEXIS 76245 (N.D. Ill. May 7, 2018). The court's first opinion dismisses the licensing claim with prejudice, and the second terminates all other claims.

The district court's comprehensive opinions make it unnecessary for us to write at length. We offer only a few words to supplement the district judge's analysis and indicate which parts of it undergird our decision.

The licensing claim failed in the district court for two principal reasons. First, the judge concluded that an "automated valuation model" differs from an "appraisal" as a matter of law under 225 ILCS 458/5-5(g). 2017 U.S. Dist. LEXIS 134785 at *11–15. Second, the judge held that plaintiffs lack a private right of action to enforce the appraisal statute. *Id*. at *15–26. We affirm for the second reason and need not consider the first.

The licensing statute omits a private right of action. Instead it makes unlicensed appraisal a Class A misdemeanor (first offense) and a Class 4 felony for any repetition. 225 ILCS 458/5-5(a). An administrative agency may impose fines of up to $25,000 per unlicensed appraisal, see §458/1-10, 458/15-5(a), and issue cease-and-desist letters that can be enforced by injunctions, see §458/15-5(d). Illinois courts create a non-statutory private right of action "only in cases where the statute would be ineffective, as a practical matter, unless such action were implied." *Metzger v. DaRosa*, 209 Ill. 2d 30, 39 (2004) (citation omitted). The district court found that the multiple means of enforcing the licensing act, and the stiff penalties for noncompliance, show that a private action is not necessary to make the statute effective. We concur.

As for the trade practices act, the district judge was right to observe that the statute deals with statements of fact, while Zestimates are opinions, which canonically are not actionable. See, e.g., *Sampen v. Dabrowski*, 222 Ill. App. 3d 918, 924–25 (1st Dist. 1991) (where a valuation is explicitly la-

beled an estimate, there is no deception); *Hartigan v. Maclean Hunter Publishing Corp.*, 119 Ill. App. 3d 1049, 1059 (1st Dist. 1983) ("If clearly labeled as an opinion a qualitative evaluation of worth is not a violation of the Act. The Act prohibits deception rather than error."). Plaintiffs want us to brush this rule aside because, they say, Zillow refuses to alter or remove Zestimates on request. This does not make a Zestimate less an opinion, however. And plaintiffs are mistaken to think that the accuracy of an algorithmic appraisal system can be improved by changing or removing particular estimates.

Suppose plaintiffs are right to think that the Zestimates for their properties are too low. Removing them from the database would skew the distribution, because all mistakes that *favored* property owners would remain, not offset by errors in the other direction. Potential buyers would be made worse off. Suppose instead that plaintiffs are wrong—that they have overestimated the value of their properties, while the Zestimates are closer to the truth. Then removing them from the database would not just skew the distribution but also increase the average error of estimates. Potential buyers of plaintiffs' properties would be deprived of valuable knowledge. Finally, suppose that plaintiffs are behaving strategically—that they know the Zestimates to be accurate (or at least closer to the likely sales price than are plaintiffs' asking prices). Then removing their parcels from the database, or "correcting" the Zestimates to match plaintiffs' asking prices, would degrade the accuracy of the database as a whole without any offsetting benefits to the real-estate market. In general, the accuracy of algorithmic estimates cannot be improved by plucking some numbers out of the distribution or "improving" others in ways that depart from the al-

gorithm's output. The process is more accurate, overall, when errors are not biased to favor sellers or buyers.

That Zillow sells ads to real estate brokers does not affect the statutory analysis. Having labeled Zestimates as estimates (something built into the word "Zestimate"), Zillow is outside the scope of the trade practices act. Almost all web sites, like almost all newspapers and magazines, try to finance their operations by selling ads. That they do so without telling customers exactly what pitches are being made to potential advertisers does not convert a declared estimate into an inaccurate statement of fact.

In addition to the trade practices act, plaintiffs invoke the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 to 505/12. The district court's second opinion shows that this claim fails for essentially the same reasons as the trade practices act claim fails, and for the further reason that plaintiffs are not buyers of real estate. 2018 U.S. Dist. LEXIS 76245 at *20–26. The subject does not require additional discussion.

AFFIRMED